# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| RODNEY RAY HAWKS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 1:17CV1021 |
| ) | |
| NANCY A. BERRYHILL, ) | |
| Acting Commissioner of Social ) | |
| Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Rodney Ray Hawks, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security, denying Plaintiff's claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (Docket Entry 1.) Defendant has filed the certified administrative record (Docket Entry 6 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 9, 11; see also Docket Entry 10 (Plaintiff's Brief); Docket Entry 12 (Defendant's Memorandum)). For the reasons that follow, the Court should enter judgment for Defendant.

## I. PROCEDURAL HISTORY

Plaintiff applied for DIB and SSI, alleging an onset date of March 3, 2014. (Tr. 192-203.) Upon denial of those applications initially (Tr. 80-97, 118-21) and on reconsideration (Tr. 98-117,

126-43), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 144-45). Plaintiff, his attorney, and a vocational expert ("VE") attended the hearing. (Tr. 34-79.) The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 13-29.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-6, 188-91, 261-62), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

> 1. [Plaintiff] meets the insured status requirements of the [] Act through March 31, 2019.
>
> 2. [Plaintiff] has not engaged in substantial gainful activity since March 3, 2014, the alleged onset date.
>
> 3. [Plaintiff] has the following severe impairments: type I diabetes with neuropathy.
>
> . . .
>
> 4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> . . .
>
> 5. . . . [Plaintiff] has the residual functional capacity to perform light work . . . in that he could occasionally lift 50 pounds; frequently lift and carry 10 pounds; sit for six out of eight hours; stand for four out of eight hours; walk for two out of eight hours; push and pull as much as he could lift and carry; frequently use right and left foot controls; frequently use right and left hand controls; occasionally reach overhead with both right and left; frequently reach all other directions with both right and left; frequently handle

with both right and left; frequently finger with left; frequently feel with right and left; occasionally climb ramps and stairs; never climb ladders, scaffolds, or ropes; occasionally balance, stoop, kneel, crouch, crawl; never be exposed to unprotected heights; have occasional exposure [to] moving mechanical parts; occasional operation of a motor vehicle; frequent exposure to weather, humidity, and wetness; occasional exposure to dust, odors, fumes, and pulmonary irritants; and occasional exposure to extreme heat, extreme cold, vibration, and moderate noise. [Plaintiff] cannot read or write instructions but has the capacity to learn past jobs through demonstration.

. . .

6. [Plaintiff] is unable to perform any past relevant work.

. . .

10. Considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform.

. . .

11. [Plaintiff] has not been under a disability, as defined in the [] Act, from March 3, 2014, through the date of this decision.

(Tr. 18-28 (bold font and internal parenthetical citations omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the Court's] review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981).

Plaintiff has not established entitlement to relief under the extremely limited review standard.

## A. Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, the Court "must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (brackets and internal quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence

4

allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[1] "To regularize the adjudicative process, the Social Security Administration has . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's]

---

[1] The Act "comprises two disability benefits programs. [DIB] provides benefits to disabled persons who have contributed to the program while employed. [SSI] provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

5

medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id.

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' *i.e.*, currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of the Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[2] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment

---

[2] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

6

is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled. See id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[4]

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

[4] A claimant thus can establish disability via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, (continued...)

## B. Assignment of Error

Plaintiff's sole assignment of error contends that "[t]he Appeals Council failed to properly consider new medical evidence submitted . . . with [Plaintiff's] request for review." (Docket Entry 10 at 2 (bold font and single-spacing omitted).) In particular, Plaintiff asserts that he "submitted to the Appeals Council copies of nerve conduction testing of [Plaintiff's] upper extremities performed by Dr. Eric Moser of Mecklenburg Neurological Associates on September 15, 2016" ("NCS Report"), which showed evidence of both ulnar and median neuropathy bilaterally. (Id. at 3 (citing Docket Entry 10-1 at 1).) According to Plaintiff, "there was no reasonable basis for the Appeals Council to conclude that [the NCS Report] d[id] not relate to the period on or before the date of the [ALJ's] decision." (Id. at 4 (referencing Tr. 2).) Moreover, Plaintiff asserts that the NCS Report qualifies as both new and material, because the NCS Report "fill[ed] an evidentiary gap found to be significant by the ALJ" (id. at 6) and "could change" the result of the ALJ's decision (id. at 7). Plaintiff requests "remand for a rehearing" under "sentence four of 42 U.S.C. § 405(g)." (Id. (emphasis added).) Plaintiff's contentions fall short.

---

[4] (...continued)
review does not proceed to the next step.").

The regulatory provisions governing the Appeals Council's consideration of new evidence, 20 C.F.R. §§ 404.970, 416.1470, changed in 2017. The prior version of those regulations, in effect until January 16, 2017, provided as follows:

> If <u>new and material</u> evidence is submitted, the Appeals Council shall consider the additional evidence only where it <u>relates to the period on or before the date of the [ALJ] hearing decision</u>. The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the [ALJ] hearing decision. It will then review the case if it finds that the [ALJ's] action, findings, or conclusion is contrary to the weight of the evidence currently of record.

20 C.F.R. §§ 404.970(b), 416.1470(b) (1987) (emphasis added).

The new versions, effective January 17, 2017, with compliance by claimants required by May 1, 2017, <u>see</u> Ensuring Program Uniformity at the Hearing and Appeals Council Levels of the Administrative Review Process, 81 Fed. Reg. 90987-01, 90987, 2016 WL 7242991 (Dec. 16, 2016), provide as follows:

> (a) The Appeals Council will review a case if—
>
> . . .
>
> (5) Subject to paragraph (b) of this section, the Appeals Council receives additional evidence that is <u>new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision</u>.
>
> (b) The Appeals Council will only consider additional evidence under paragraph (a)(5) of this section if you show <u>good cause for not informing us about or submitting the evidence as described in § 404.935</u> because:
>
> (1) Our action misled you;

9

>   (2) You had a physical, mental, educational, or linguistic limitation(s) that prevented you from informing us about or submitting the evidence earlier; or
>
>   (3) Some other unusual, unexpected, or unavoidable circumstance beyond your control prevented you from informing us about or submitting the evidence earlier.

20 C.F.R. §§ 404.970, 416.1470 (2017). Thus, the new regulations add two requirements to a claimant's burden to have new evidence considered for the first time at the Appeals Council level of review: (1) a requirement that a claimant demonstrate good cause for the failure to submit the evidence in question at least five days prior to the ALJ's decision pursuant to 20 C.F.R. §§ 404.953, 416.1453; and (2) a requirement to show a reasonable probability of a different outcome.[5]

In conjunction with the above-described regulatory change, the Social Security Administration amended its internal procedures manual to clarify when evidence submitted to the Appeals Council qualifies as new, material, and related to the period on or before the ALJ's decision. See Hearings, Appeals, and Litigation Law Manual ("HALLEX"), § I-3-3-6B.2 ("Additional Evidence") (May 1, 2017), available at https://www.ssa.gov/OP_home/hallex/I-03/I-3-3-

---

[5] Long-standing Fourth Circuit law defined "material" as a reasonable possibility the new evidence would have changed the outcome of the case. See Meyer v. Astrue, 662 F.3d 700, 704 (4th Cir. 2011); Wilkins v. Secretary, Dep't of Health & Human Servs., 953 F.2d 93, 96 (4th Cir. 1991). Thus, the new versions of Sections 404.970 and 416.1470 increase a claimant's burden from showing a reasonable possibility to a reasonable probability, and make the obligation to show a reasonable probability of a different outcome an additional requirement to showing materiality.

10

6.html.  According to the HALLEX, evidence submitted to the Appeals Council is:

- "new if it is <u>not part of the [administrative record]</u> as of the date of the [ALJ's] decision";

- "material if it is <u>relevant</u>, i.e., involves or is directly related to issues adjudicated by the ALJ"; and

- "relate[d] to the period on or before the date of the hearing decision if the evidence is dated on or before the date of the hearing decision, or . . . post-dates the hearing decision but is <u>reasonably related</u> to the time period adjudicated in the hearing decision."

HALLEX, § I-3-3-6B.2 (emphasis added).

Plaintiff's counsel requested review with the Appeals Council on October 17, 2016. (Tr. 188-91.) On December 2, 2016, the Appeals Council "granted [Plaintiff's] request for more time before [the Appeals Council] act[ed] on [Plaintiff's] case." (Tr. 9.) Thereafter, Plaintiff's counsel submitted a brief and the NCS Report to the Appeals Council on December 19, 2016. (See Tr. 261-62.) The NCS Report demonstrated "moderate ulnar neuropathy at the right elbow with evidence of some denervation in distally innervated muscles, moderately severe unlnar neurop[a]thy at the left elbow with evidence of sensory and motor axonal loss distally, mild median neuropathy at the left wrist, and very mild median neuropathy at the right wrist." (Tr. 261; see also Docket Entry 10-1 at 1, 4.) Dr. Moser noted that "th[o]se findings could be caused by ulnar or median neuropathies, by generalized sensory

11

motor polyneuropathy, or from bilateral C8/T1 radiculopathy." (Tr. 261; see also Docket Entry 10-1 at 1.)

On March 24, 2017, the Appeals Council provided Plaintiff with advanced notice of the regulatory change and an opportunity to submit additional evidence and argument directed at demonstrating a reasonable probability of a different outcome. (See Tr. 7-8) In that notice, the Appeals Council expressly recognized that Plaintiff could not retroactively comply with the new requirement that, absent good cause, claimants must submit evidence at least five days before the ALJ's hearing, and waived the requirement that Plaintiff demonstrate good cause. (See Tr. 8.) Plaintiff did not submit additional argument or evidence after that notice.

The Appeals Council denied Plaintiff's request for review on September 12, 2017, remarking as follows:

> [Plaintiff] submitted [the NCS Report] (5 pages). The [ALJ] decided [Plaintiff's] case through August 19, 2016. This additional evidence does not relate to the period at issue. Therefore, it does not affect the decision about whether [Plaintiff] w[as] disabled beginning on or before August 19, 2016.

(Tr. 2.) The Appeals Council exhibited Plaintiff's request for review and supporting brief, but did not incorporate the NCS Report into the administrative record, and further advised Plaintiff that, "[i]f [he] want[ed the Commissioner] to consider whether [Plaintiff] w[as] disabled after August 19, 2016, [he] need[ed] to apply [for benefits] again." (Tr. 5.)

12

Plaintiff requests a remand under sentence four of 42 U.S.C. § 405(g) (see Docket Entry 10 at 7) on the grounds that "there was no reasonable basis for the Appeals Council to conclude that [the NCS Report] d[id] not relate to the period on or before the date of the [ALJ's] decision" (id. at 4).[6] As an initial matter, doubt exists whether this Court possesses the authority to scrutinize the Appeals Council's decision not to incorporate the NCS Report into the administrative record and/or to deny Plaintiff's request for review. Section 405(g) grants this Court the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the [final] decision of the Commissioner [], with or without remanding the cause for a rehearing," 42 U.S.C. § 405(g). However, "when the [Appeals] Council has refused to review the case[,] . . . the decision reviewed in the [federal district] courts is the decision of the [ALJ]." Eads v. Secretary of Health & Human Servs., 983 F.2d 815, 817 (7th Cir. 1993)

---

[6] In so doing, Plaintiff does not argue that the NCS Report, when considered as part of the administrative record as a whole, renders the ALJ's decision unsupported by substantial evidence. (See Docket Entry 10 at 2-7). Nor could Plaintiff do so, because, as discussed above, the Appeals Council here declined to incorporate the NCS Report into the administrative record (see Tr. 5) and, under sentence four of Section 405(g), the Court must limit its review to the certified administrative record, see Wilkins v. Secretary, Dep't of Health & Human Servs., 953 F.2d 93, 96 (4th Cir. 1991) ("Reviewing courts are restricted to the administrative record in performing their limited function of determining whether the [Commissioner's] decision is supported by substantial evidence." (quoting Huckabee v. Richardson, 468 F.2d 1380, 1381 (4th Cir.1972))); see also Farrell v. Astrue, 692 F.3d 767, 770 (7th Cir. 2012) ("Evidence that has been rejected by the Appeals Council cannot be considered to reevaluate the ALJ's factual findings."); Will v. Colvin, No. 3:14-CV-00754-JE, 2016 WL 3450842, at *9 (D. Or. May 18, 2016) (unpublished) (holding that "the [c]ourt is precluded from reviewing the unincorporated evidence for substantial evidence of disability under 'sentence four' of 42 U.S.C. § 405(g)"), recommendation adopted, No. 3:14-CV-00754-JE, 2016 WL 3457017 (D. Or. June 20, 2016) (unpublished).

(emphasis added). In other words, "[n]o statutory authority (the source of the district court's review) authorizes the court to review the Appeals Council['s] decision to deny review." Matthews v. Apfel, 239 F.3d 589, 593, 594 (3d Cir. 2001).

Even if this Court possessed the statutory power to review the Appeals Council's decision declining to incorporate the NCS Report and/or to deny review,[7] no basis exists for a sentence four remand. Here, the Appeals Council waived the requirement that Plaintiff show good cause for failure to submit the NCS Report to the ALJ prior to the hearing (see Tr. 8), and the NCS Report undoubtedly qualifies as "new," as it did not exist at the time of the ALJ's decision and the administrative record contains no other nerve conduction studies.[8] Moreover, the NCS Report qualifies as

---

[7] The undersigned could not find any decisions from the United States Court of Appeals for the Fourth Circuit specifically addressing whether district courts have the authority to review the Appeals Council's decision not to incorporate new evidence into the administrative record. However, decisions exist in other circuits which hold that, under the prior versions of 20 C.F.R. §§ 404.970, 416.1470, federal district courts may review de novo legal errors by the Appeals Council in applying its own regulations. See Getch v. Astrue, 539 F.3d 473, 483 (7th Cir. 2008) (noting that the court would "evaluate de novo whether the Appeals Council made an error of law in applying [20 C.F.R. §§ 404.970(b), 416.1470(b)]"); Mills v. Apfel, 244 F.3d 1, 5 (1st Cir. 2001) ("holding that an Appeals Council refusal to review the ALJ may be reviewable where it gives an egregiously mistaken ground for this action"); Box v. Shalala, 52 F.3d 168, 171-72 (8th Cir. 1995) ("Whether the evidence is new, material and related to the relevant period is a question of law reviewed de novo."); see also Ledbetter v. Astrue, No. 8:10-CV-00195-JDA, 2011 WL 1335840, at *13 n.7 (D.S.C. Apr. 7, 2011) ("[G]enerally, the [Appeals] Council's decision whether to review is discretionary and unreviewable. But review of the [Appeals] Council's decision is allowed in the presence of legal error." (internal citations omitted) (relying on, inter alia, Perkins v. Chater, 107 F.3d 1290, 1294 (7th Cir. 1997), Mills, and Box).

[8] Indeed, in finding Plaintiff's CTS a non-severe impairment at step two of the SEP, the ALJ noted that, "[a]lthough [Plaintiff] indicated that he had nerve conduction studies that supported he had [CTS] and he was allowed to submit supporting records, the records provided do not include any nerve conduction
(continued...)

14

material, because it gauged the extent of Plaintiff's upper extremity neuropathies, matters "directly related to issues adjudicated by the ALJ," HALLEX, § I-3-3-6B.2.

A more difficult question arises, however, as to whether the NCS Report relates to the period on or before the ALJ's decision. On the one hand, the Fourth Circuit has held that courts should consider newly produced medical evidence that post-dates a claimant's date last insured for DIB purposes, if a linkage exists between the earlier relevant medical evidence and the newly produced evidence that "'reflect[s] a possible earlier and progressive degeneration,'" Bird v. Commissioner of Soc. Sec. Admin., 699 F.3d 337, 341 (4th Cir. 2012) (quoting Wooldridge v. Bowen, 816 F.2d 157, 160 (4th Cir. 1987)). Some district courts in the Fourth Circuit have applied Bird to find that the Appeals Council should consider evidence that post-dates the ALJ's decision when such evidence "reflect[s] a possible earlier and progressive degeneration," Bird, 699 F.3d at 341-42 (quotation marks omitted). See, e.g., Briggs v. Berryhill, No. 4:16-CV-240-FL, 2017 WL 4230584, at *6 (E.D.N.C. Aug. 30, 2017) (unpublished) (holding that "evidence submitted to the Appeals Council that post-dated the ALJ's decision by two months required consideration, because the record is not so persuasive as to rule out any linkage of the final condition of the claimant with his earlier symptoms and the

---

[8] (...continued)
studies." (Tr. 19 (citing Tr. 404-44).)

15

evidence could be the most cogent proof of plaintiff's pre-decision disability" (internal quotation marks omitted) (relying on Bird)), recommendation adopted, 2017 WL 4226040 (E.D.N.C. Sept. 22, 2017) (unpublished). Thus, Plaintiff argues that "the medical evidence of record establishes that [he] exhibited significant neuropathy symptoms before" the ALJ's decision, and that "nothing in the medical evidence . . . suggest[s] that [Plaintiff's] neuropathy symptoms suddenly manifested one month after the date of the hearing decision." (Docket Entry 10 at 4; see also Docket Entry 10-1 at 2 (NCS Report's "Patient History" section reflecting that Plaintiff "present[ed] with a long history of neck pain, bilateral radiating arm pain and numbness and tingling in the hands bilaterally, left greater than right" and that "[h]is symptoms [we]re worsening with time" (emphasis added)).)

On the other hand, the NCS Report neither references treatment records or testing results preceding the ALJ's decision, nor provides any opinion on how long Plaintiff experienced bilateral ulnar and median neuropathies at the level of severity shown on the NCS Report. (See Docket Entry 10-1.) Such omissions would tend to dispel any required linkage between the NCS Report and Plaintiff's condition on or before the ALJ's decision. See Kiser v. Colvin, No. 1:14CV325-RJC-DSC, 2015 WL 12762258, at *4 (W.D.N.C. Oct. 13, 2015) (unpublished) ("Both [doctors' opinions] describe [the p]laintiff's condition as of the time they were written. There is

16

no indication that the doctors' opinions were meant to apply retroactively. Therefore, there is no connection between this new evidence and the period of time under consideration by the ALJ." (internal citation omitted)), recommendation adopted, 2016 WL 884690 (W.D.N.C. Mar. 8, 2016) (unpublished); Jones v. Astrue, No. 4:11-CV-146-FL, 2012 WL 3822204, at *2 (E.D.N.C. June 5, 2012) (unpublished) ("The [new] records contain no references to prior treatment records. Moreover, the records provide no information as to how [the p]laintiff's symptoms affected her work-related abilities during the relevant time."), recommendation adopted, 2012 WL 3834924 (E.D.N.C. Sept. 4, 2012) (unpublished).

The Court need not resolve that issue, however, because even if the Appeals Council erred by finding that the NCS Report did not relate to the period before the ALJ, any such error qualifies as harmless under the circumstances of this case. See generally Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a [Social Security] case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result."). Here, Plaintiff has not demonstrated that the NCS Report raises a reasonable probability of a different outcome.

Despite the Appeals Council's invitation to Plaintiff to submit argument regarding whether new evidence raised a reasonable probability of a different result (see Tr. 8), Plaintiff did not

17

submit any such argument to the Appeals Council. Moreover, in the Brief in support of his instant Motion, Plaintiff merely contends that the NCS Report "<u>may</u> influence the ALJ to change the [RFC] assessment" from frequent to occasional hand controls, handling, fingering, and feeling, which the VE testified would eliminate competitive employment (Docket Entry 10 at 6 (citing Tr. 75-76) (emphasis added)) and that, if the ALJ considered the NCS Report, "the outcome of the hearing decision <u>could</u> change" (<u>id.</u> at 7 (emphasis added).) Plaintiff's argument that the NCS Report "may" or "could" change the outcome amounts to arguing that the NCS Report raises a reasonable <u>possibility</u> of a different result, which no longer represents the governing standard.

Furthermore, Dr. Moser noted that the findings on the NCS Report "can be seen in cases of both [u]lnar and [m]edian neuropathies bilaterally, <u>or</u> from a generalized sensory motor polyneuropathy, <u>or</u> from bilateral C8/T1 radiculopathy" (Docket Entry 10-1 at 1 (emphasis added)) and, thus, the NCS Report contains <u>no</u> definitive diagnoses. To the extent sensory motor polyneuropathy remained a <u>possible</u> diagnosis, the ALJ recognized that, "[i]n April, May, June and July 2015, [Plaintiff] was assessed with upper and lower extremity sensory motor polyneuropathy and diabetic peripheral neuropathy (<u>see</u> Tr. 23; <u>see also</u> Tr. 415, 417, 420, 423), and the ALJ found Plaintiff's diabetic neuropathy a severe impairment at step two (<u>see</u> Tr. 18).

18

Regarding Plaintiff's CTS in particular, the NCS Report does not mention (much less diagnose) CTS, and the Report's findings of "mild" and "very mild" median neuropathies would confirm rather than contradict the ALJ's finding that Plaintiff's CTS constituted a non-severe impairment (see Tr. 18). (Docket Entry 10-1.)

Lastly, the NCS Report merely reflects possible neurological diagnoses and proffers no functional limitations arising out of such conditions. Under such circumstances, Plaintiff has not shown a reasonable probability that the ALJ's consideration of the NCS Report would have resulted in his limiting Plaintiff to only occasional manual activities and, ultimately, a favorable finding at step five of the SEP. Jones, 2012 WL 3822204, at *2 (holding new evidence failed to raise reasonable probability of a different outcome, in part, because "the[ new] records provide no information whatsoever regarding [the p]laintiff's functional limitations").

In sum, no basis exists to remand this matter based on the NCS Report under sentence four of 20 U.S.C. § 405(g).[9]

---

[9] Plaintiff does not seek remand under sentence six of Section 405(g) based on the NCS Report. See generally Brown v. Colvin, No. 7:14-CV-283-D, 2015 WL 7307320, at *6 (E.D.N.C. Oct. 27, 2015) (unpublished) ("To the extent that . . . the additional evidence . . . remains outside the record, . . . this evidence is appropriately treated as having been submitted for the first time to th[e] court and therefore as being subject to sentence six of 42 U.S.C. § 405(g)" (emphasis added)), recommendation adopted, 2015 WL 7306453 (E.D.N.C. Nov. 19, 2015) (unpublished); Hamm v. Colvin, No. 4:13-CV-00059, 2015 WL 225408, at *5 (W.D. Va. Jan. 16, 2015) (unpublished) ("Courts in this [d]istrict review additional evidence returned [by the Appeals Council] to a claimant under sentence six of 42 U.S.C. § 405(g) to determine whether remand is required." (emphasis added)); Lavigne ex rel. F.L. v. Barnhart, No. CIV.A. 705CV00043, 2006 WL 318610, at *8 (W.D. Va. Feb. 8, 2006) (unpublished) ("Sentence six applies specifically to evidence not incorporated into the record by either the ALJ or the Appeals Council." (emphasis added)).

### III. CONCLUSION

Plaintiff has not established an error warranting remand.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion to Reverse the Decision of the Commissioner of Social Security (Docket Entry 9) be denied, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 11) be granted, and that this action be dismissed with prejudice.

<u>   /s/ L. Patrick Auld   </u>
**L. Patrick Auld
United States Magistrate Judge**

December 21, 2018